IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STACEY D. PRIER,

        Plaintiff,

vs.

Case No. 04-1387-JTM

GARY E. STEED, SEDGWICK COUNTY SHERIFF,

        Defendants.

MEMORANDUM AND ORDER

      The plaintiff Stacey Prier was fired from her Sheriff's Department job after she pled guilty to a municipal court charge of disorderly conduct by fighting. Prier argues that her conviction does not constitute a crime of domestic violence within the meaning of 18 U.S.C. § 922(g). She also contends that her discharge was not prompted by her Municipal Court conviction, but in reality as retaliation for her use of leave under the Family and Medical Leave Act.

      The present case is the direct successor of earlier litigation, *Prier v Steed*, No. 03-1446-JTM (D. Kan. Nov. 5, 2004); which was dismissed by the court as lacking jurisdiction after the parties had dismissed from the case the sole substantive and independent issue of federal law, the claim of family leave retaliation. No. 03-1446-JTM, Dkt. No. 42. The action has been re-filed with the retaliation claim present in the action, and thus the declaratory judgment action is no longer the sole basis for the court's jurisdiction. The matter is before the court on cross-motions for summary judgment by Prier and Defendant Sheriff Gary Steed as to the applicability of the Brady Act to Prier's employment.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

**Findings of Fact**

Between January 27, 1992 and February 14, 2003, Prier was employed by the Office of the Sedgwick County Sheriff, serving at various times as a Patrol Deputy and as a Deputy assigned to

the Judicial Section of the Support Bureau which provides services to the 18th Judicial District Court of Kansas. There was a short interruption of her employment between February and May of 2000, when she temporarily stayed at home with her children. Between 1997 and the time of her termination, Prier primarily served in the "book position," which was essentially a desk job in the courthouse.

On July 5, 2002, Prier was involved in a domestic violence disturbance with her husband, during which she slapped her husband during an argument. Prier's husband, Douglas L. Prier, is a police officer in Maize, Kansas. Officers from the Wichita Police Department responded to the Priers' residence in response to the disturbance, where she "made up a lie," telling them that her husband had hit her first, because she was afraid of losing her job. Prier was charged in the Municipal Court of the City of Wichita with domestic violence battery for the battery of her husband, contrary to section 5.10.025 of the Code of the City of Wichita.

Between the disturbance and her plea, the Sheriff's Department barred Prier from carrying a firearm, but allowed her to perform duties which did not require the carrying of a firearm.

Prier's counsel Laverne "Vern" Miller contacted several persons before the plea to see if she would lose her certification. Miller asked only about a general conviction for disorderly conduct, and not the specific charge of disorderly conduct by fighting. Miller spoke with prosecutor Mary McDonald, who agreed to a plea arrangement whereby Prier would plead guilty to disorderly conduct. She told Miller she was certain this plea would not cause Prier to lose her job.

Miller also talked to Sheriff Gary Steed, Attorney Ed Randels and one or more representatives from the Kansas Law Enforcement Training Commission. After visiting with these people, Miller felt comfortable telling Prier to enter into the plea arrangement, and testified that he would not have let her do so if he would have thought that it would jeopardize her certification. Miller testified that he thought he could have won the case if he would have had any concern that a plea bargain would adversely affect Prier's certification.

On January 2, 2003, Prier entered a plea of no contest to and was found guilty of an amended charge of Disorderly Conduct by Fighting contrary to Section 5.24.010(a) of the Code of the City of Wichita.

On or about the day of her plea, Prier reported to her supervisor, Captain McKeel that she had resolved the Municipal Court case by entering a plea to a reduced charge of disorderly conduct. She told him that she had been told by her attorney, based upon conversations the attorney had with others, that her plea should not cause her to lose her law enforcement certification. At the request of Undersheriff John Green, Captain McKeel obtained a copy of the court records from the municipal court. At that time, no one informed Prier there would be any problem with her employment; in fact, the next day she qualified with her new firearm, and reported to work in uniform on January 6, 2003. Prier worked the rest of the month of January in uniform, with a side arm, except for several absences resulting from the death of her grandfather, the hospitalization of her young child and an injury to her husband.

In late January or early February, Prier first learned that her job was in jeopardy. Captain McKeel told her that he was very disappointed in the fact that Prier had to take off work right after getting back into uniform. He told her he was unhappy about the days she had missed, even though at least some of this time was approved for family and medical leave. Captain McKeel also indicated that he wanted to terminate her due to her disorderly conduct plea.

On or about February 5, 2003, Prier was provided notice that she had been recommended for termination. Sometime before this but after late January, Prier's supervisor told her that he was recommending her for termination.

On February 7, 2003, Prier attended an Employee Status Hearing, where she was provided an opportunity to respond, and did respond, to the allegations set out in the February 5, 2003, letter.

On February 11, 2003, Prier was provided a letter of termination which set out reasons for her termination of employment. The reasons set out included only her lengthy disciplinary history and her conviction in municipal court, the letter stating that the conviction reflected poorly on the

Sheriff's Office. The letter stated that the provisions of 18 U.S.C. § 922(g) prohibit a person convicted of a misdemeanor crime of domestic violence from carrying a firearm, and that her conviction was being construed as being one of domestic violence.

Prier filed a grievance with the Sheriff's Civil Service Board, and her termination was upheld by said independent board in a split decision. Prier appealed this decision to the District Court of the 18th Judicial District. Judge Karl W. Friedel upheld the decision of the Sheriff's Civil Service Board.

Prier has a reputation among the district judges as a very good worker and a decent person.

**Conclusions of Law**

The Brady Act bars certain persons from possessing firearms, including persons convicted of a misdemeanor crime of domestic violence. 18 U.S.C. § 922(g)(9). The statute defines this term in 18 U.S.C. § 921(a)(33), which provides:

> (A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that —
>   (i)  is a misdemeanor under Federal or State law; and
>   (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.
> (B) (i) A person shall not be considered to have been convicted of such an offense for purposes of this chapter, unless —
>     (I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and
>     (II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either
>       (aa) the case was tried by a jury, or
>       (bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.
>   (ii) A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration

> of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Here, Prier pled guilty to violating the Wichita Municipal Code § 5.24.10 for disorderly conduct by fighting. Section 5.24.010 of the Wichita Municipal Code defines disorderly conduct as follows:

> Disorderly conduct is, with knowledge or probable cause to believe that such acts will alarm, anger or disturb others or provoke an assault or other breach of peace:
> (a) Engaging in brawling or fighting; or
> (b) Disturbing an assembly, meeting, or procession, not unlawful in its character; or
> (c) Using offensive obscene, or abusive language or engaging in noisy conduct, tending to reasonably arouse alarm, anger or resentment in others.

Section 5.24.040 of the Code provides:

> Violation of any of the provisions of this chapter constitutes a misdemeanor, and any violation thereof shall be punished by a fine of not more than five hundred dollars, or one year imprisonment, or by both such fine and imprisonment.

The court finds that the Brady Act prohibits Prier from legally possessing a firearm. The cases cited by the parties all involve fact situations and local ordinances from other states. *See, e.g., United States v. Serrao*, 301 F.Supp.2d 1142 (D. Ha. 2004). None are directly relevant here. Prier cites to general statements (for example, *Black's Law Dictionary*, at 565 (5th Ed. 1979) of the law that a "fight" may be verbal in nature. But here it is critical that Prier pled guilty to subsection (a) of the disorderly conduct ordinance, specifically for "Dis.Cond./Fighting, 5.24.010A." Fighting as that term is used in subsection (a) should not be understood to mean mere "fighting words" for two reasons. First, the term there is paired with "brawling," with a term with unmistakable connotations of physical violence. Second, "fighting words" or vehement and heated *verbal* conflict is separately punished, in subsection (c) of the ordinance. To give meaning to each portion of the ordinance, "fighting" as used in subsection (a) must be understood to have some element of the use of physical force. Accordingly, the conviction triggers application of the Brady Act's bar on the possession of a firearm.

Plaintiff Prier may have been poorly served in the advice she received or in the representations by various persons that a conviction would not prevent her from carrying out her job.

But that advice or those representations cannot bind, alter, or limit the clear application of federal law prohibiting the possession of firearms by persons who have pled guilty to a crime of domestic violence.

IT IS ACCORDINGLY ORDERED this 16th day of May, 2005, that the defendant's Motion for Partial Summary Judgment (Dkt. No. 7) is granted; plaintiff's Motion for Summary Judgment (Dkt. No. 9) is denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE